## NATIONAL BISCUIT CO. v. OLD SOUTH CONE CO. et al.

### No. 4262.

District Court, D. Massachusetts.

Dec. 7, 1938.

Clifford H. Byrnes, of Boston, Mass., and Henry J. Savage, of New York City, c/o of Clifford H. Byrnes, of Boston, Mass., for plaintiff.

Samuel Markell, Arthur L. Sherin, and Goulston & Storrs, all of Boston, Mass., for defendants Old South Cone Co., Inc., Modern Baking Co., Inc., Atlantic Cone Co., Inc., United Products Co., Inc., Modern Die & Machine Co., Benjamin Lichter, Benjamin Smith, and Samuel Werlin.

Jennie Loitman Barron, of Boston, Mass., for defendant Wollaston Foundry, Inc.

William Gates, Jr., of Boston, Mass., for all defendants except Wollaston Foundry Co.

William Gates, Jr., and Roberts, Cushman & Woodberry, all of Boston, Mass., for defendant Crown Baking Co., Inc.

Charles D. Brown, Receiver of Old South Cone Co., Inc., of Boston, Mass., for defendant Old South Cone Co.

William Gates, Jr., and Roberts Cushman & Woodberry, all of Boston, Mass., withdrawn as to defendants Old South Cone Co., Inc., Atlantic Cone Co., Inc., Benjamin Lichter, and Benjamin Smith.

George L. Rabb and Rabb & Rabb, all of Boston, Mass., for defendant Modern Die & Machine Co.

Jennie Loitman Barron and Samuel Barron, Jr., both of Boston, Mass., for defendant Wollaston Foundry, Inc.

BREWSTER, District Judge.

This infringement suit involves Letters Patent of the United States No. 1,551,998 to Walter McLaren and No. 1,392,284 to Webster M. Roberts.

It was referred to a master and is now before the Court on objections to the master's report, filed by the plaintiff, and objections filed by the defendants Werlin, United Products Company, Inc., Modern Baking Company, Inc., and Crown Baking Company, Inc.

The plaintiff's objections respecting the McLaren patent relate to the master's findings (1) of prior public use; (2) that certain claims did not involve invention; (3) that Claim 83 was anticipated; and respecting the Roberts patent that it was not infringed.

The defendants object to the master's findings (1) that Claims 5, 12, 47 and 60 of McLaren's patent were valid and infringed; and (2) to the master's refusal to rule that the public use rendered the entire patent invalid.

So far as the master's report contains findings of fact, they are adopted by this court and may be considered as the findings of this court (R.C.P. 52 and 53).

The issues raised which merit consideration are:

(1) Is the McLaren patent invalid because of prior public use;

(2) Does the validity of some of the claims render the whole patent invalid; and

(3) Do the defendants infringe the Roberts claims in suit?

In order to intelligently consider these issues, it will be necessary to draw upon the master's findings to some extent.

The McLaren patent is for an automatic cup pastry making machine. It was issued September 1, 1925, on application filed March 10, 1923.

The Roberts patent is for a similar machine and was issued September 27, 1921, on application filed August 11, 1916.

First. As to the validity of the McLaren patent. The plaintiff elected to stand on 20 of the 83 claims of this patent. Of these 20 claims the master found that only 4 were valid and infringed, viz.: Claims Nos. 5, 12, 47 and 60. He found that 10 claims were invalid in view of prior public use; and 6 claims invalid as not being patentable inventions over the machines of prior use.

One question presented is whether, on the facts found by the master, the defendants have sustained the defense of prior public use of the invention for more than two years prior to March 10, 1923. The facts bearing upon this issue may be summarized as follows:

In May, 1920, an automatic machine for making ice-cream cones was delivered to the Atlantic Cone Company, Inc., pursuant to a license agreement entered into in 1919 between Alexander McLaren, a brother of the patentee, and the Atlantic Cone Co., Inc., by which McLaren, for a specified royalty, licensed the Company to use "certain new machines being designed and constructed by or for the licensor." The license provided that should the licensor be unable to complete the construction of such machine and test the same out before the date fixed for delivery, or should such machine on completion not operate to the full satisfaction of the licensor, the time for delivery was to be extended "for such reasonable time as will enable the licensor to change, correct, modify, improve or rebuild the machines so that they will work satisfactorily."

The machine delivered was somewhat complicated. It will not, however, be necessary to describe it in detail. It will be sufficient to say that it was a completely automatic machine for the manufacture of ice-cream cones, the various working parts being supported on a structural frame and enclosed by sheet metal casing to conserve the heat. Molds or baking units were linked together to form an endless chain to pass over a large sprocket at each end of the machine. At one point each mold unit was, in turn, charged with a measured quantity of thin batter and then carried by the endless chain over gas burners and around the machine while the cones were being baked. The molds then automatically opened to discharge the baked cone and closed again to receive a new charge of batter. The operation was continuous. Each baking unit had seven cavities, and cores slightly smaller than the mold cavities which were inserted therein, leaving a space between the core and the mold for the batter. The outer section of the mold was in two halves. As the mold opened up to discharge the baked cone, the cores were lifted and carried up and over, by what is termed "pick-up and carry-over mecha-

nism" which picked the cores out of the molds on one side of a pump and carried them over the pump and returned them into the mold on the opposite side. During this pick-up operation, the closed mold unit passed under the pump which supplied the batter to each mold cavity.

The machine was delivered in parts and the molds at a later date. When it was set up, it was found that it was inoperative. Some of the parts broke, and adjustments of other parts were difficult to make. The main defect resided in the fact that the cones could not be carried over the pump and dropped into the mold, and the cores and cross-bars were so constructed that there was an inadequate amount of metal in the head of the cores exposed to the heat. This latter defect was remedied in the Fall of 1920 when a new set of molds and cores was supplied. Finally, after the new molds and cores had been properly adjusted and the broken parts replaced, the machine was operating and turning out cones in substantial quantities by October 25, 1920. Thereafter, further difficulties were encountered in the operation of the machine. There were frequent breakdowns, interspersed with commercial operation.

In November, 1920, it appeared that many of the cones were cracked on the inside and were, therefore, unsatisfactory, or unmerchantable, and, for a substantial period, as many as 40% of the cones were unsatisfactory because of the defect. However, in December, 1920, at the earnest solicitation of the Atlantic Cone Company, Inc., a second machine, similar to the first, was delivered under the license agreement. The operation of this machine was comparable to that of the first machine. The master also found that in 1920 two cone-baking machines, similar to the ones furnished the Atlantic Cone Company, were sold in Dayton, Ohio, and used in the commercial production of cones prior to March, 1921.

These 1920 machines differed from the machine of the patent in several particulars, which need not be fully enumerated. It will be enough to note that the patented machine was supplied with molds to which had been added waste rings and vents to permit the escape of steam, whereas the 1920 machine was equipped with so-called "waste-prevention" molds, constructed to avoid overflow of batter. The new molds called for mechanism for trimming the cones after they were baked. In the patented machines such mechanism is provided. There were other improvements in the pick-up and carry-over mechanism. Unquestionably these modifications and additions all improved the efficiency of the machine to turn out a satisfactory product.

The plaintiff contends that the 1920 machines were not so complete or operative prior to March 10, 1921, as to defeat a patent for the completed invention.

■ Undoubtedly the machines of the prior use must be complete and capable of being operated, but it is not necessary to prove that the earlier machines were as efficacious as the one for which the patent issued. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L. Ed. 141.

■ If they embodied substantially the principles and elements of the invention, they invalidated the patent. There is abundant evidence to warrant the finding of the master that the machines were operable in 1920 and were operated commercially. The question arises—was this operation for the purpose of experimentation or was it a public use within the purview of the statute? It is said that, in order to determine whether the use was for purposes of experimentation, it is necessary to examine the circumstances under which the machine was put out for use by others, and the object and purpose of the inventor in so doing. Elizabeth v. American Nicholson Pavement Co., 97 U.S. 126, 133, 135, 24 L. Ed. 1000.

■ The first machine, delivered in May, and the second, delivered in December, 1920, came in response to urgent demands from the Cone Company, and a great deal of dissatisfaction was shown over the delay in making these deliveries. The license agreement clearly contemplated that tests and experiments were to be made before delivery. Tests and experiments were made before delivery, the defendant Werlin witnessing a test at Chicago. The McLarens were satisfied that the machine was sufficiently practicable and useful to operate successfully in the commercial production of cones. The master expressly finds that —

"There was no occasion to lease this machine to the Atlantic Co. for experimental purposes. There is no evidence that at the Chicago plant there was not adequate facility for experimentation. I find that

this machine was delivered to the lessee, Atlantic Co., pursuant to the contract, as a completed, practical machine for commercial use, and not with the idea that it was to be used by the lessee in Boston for experimental purposes except insofar as the operation of any new machine in the hands of a user is commonly studied by its manufacturer with a view to further improvement and perfection."

Moreover, the improvements made were the result of experiments made at the patentee's plant in Chicago.

It must be readily apparent, from the terms of the agreement under which the machine was delivered and the circumstances as found by the master, that the inventor did not ship it to Massachusetts and set it up there in order that he might carry on experiments.

The use, therefore, must be deemed to be prior public use. Aerovox Corporation v. Polymet Mfg. Corporation, 2 Cir., 67 F. 2d 860.

The foregoing disposes of plaintiff's objections Nos. 1 to 21 inclusive and Nos. 28 and 29. These objections are overruled.

■ Second. Do the findings that certain claims are invalid because of prior public use render the patent invalid in its entirety (Defendants' objections 1 and 2)?

The defendants invoke the doctrine stated in the earlier cases that a patent with an invalid claim is wholly void. Ensten v. Simon, Ascher & Co., Inc., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453.

The defendants contend that the plaintiff cannot avail itself of the provisions of the statutes relating to disclaimer (35 U.S. C.A. §§ 65 and 71), the argument being that the patentee did not claim too much through "inadvertence, accident, or mistake, and without any fraudulent or deceptive intention", or, differently stated, that the statute does not apply when the ground upon which the patent is invalidated is prior public use. It is impossible to accept this argument as sound, in view of the decisions.

In Smith & Griggs Mfg. Co. v. Sprague, supra, claims were held invalid because of prior public use; nevertheless, other claims of the patent were upheld. While the precise point was not discussed in the opinion, the case has been accepted as authority for the proposition that when a claim is invalid because the parts covered have been in public use more than two years prior to

the patentee's application, the rest of the claims are valid. Otis Elevator Co. v. Pacific Finance Corporation, 9 Cir., 68 F.2d 664.

See, also, Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S. Ct. 495, 53 L.Ed. 805; Whitney v. Boston & A. R. Co., C.C., 50 F. 72.

■ Generally speaking, the cases cited by the defendants deal with unreasonable delay in disclaiming after a final determination of validity. Obviously, those cases are not in point. There is no duty to disclaim until a final determination of the question of validity. O'Reilly v. Morse, 15 How. 62, 14 L.Ed. 601; Excelsior Steel Furnace Co. v. F. Meyer & Brother Co., 7 Cir., 36 F.2d 447.

■ Defendants' objections 1 and 2 are therefore overruled.

Third. Plaintiff's objections 30 to 35 inclusive relate to findings of the master to the effect that the claims of the Roberts patent in suit are not infringed. The defendants' machine reads upon the claims if their language be given a broad interpretation. The question here presented is whether the Roberts patent is entitled to equivalents which would embrace the departures found in the defendants' machine. On this question the master has found:

"Roberts incorporated the split mold with cores and core bars (old in the art), in an endless belt sprocket machine (an old type of baking machine), and provided for automatically filling the molds and baking and discharging the cones, as is essential in any automatic cone machine.

"As thus described or defined, defendants' machine is a similar organization, functioning to the same end. But the two machines are very different in construction and organization. And the differences go beyond mere matters of structural detail. For instance, in Roberts there is a highly complicated mechanism for carrying the molds and locking the cores in the molds, with the molds rotatably mounted on the carrier and provision for inverting and reverting them as they proceed from one sprocket to the other, so that the heat will be applied alternately at the top and bottom for proper baking. Provision for rotation of the molds is also utilized to properly position the mold at the center of the outer periphery of one sprocket, for discharge of the baked cone. The organization and con-

struction is such that a step by step movement is called for.

"Defendants' machine (the McLaren machine) is an endless belt sprocket machine, with Bruckman's split molds and cores and core bars, with provision for baking, filling the molds, and discharging the cores.

"Defendants' machine, however, embodies a very substantial departure in important respects from the Roberts machine, involving as it does a very different and much simplified mold carrying arrangement, a much simplified relation of core bar and core to the molds, which, together with the core carry-over mechanism, located adjacent the lower run, permit continuous movement and a greatly simplified and improved arrangement and result."

All the claims of the Roberts patent contain means for doing one thing or another. Without analyzing these in detail, the master concluded that "these 'means' elements, for reasons already given, cannot in my judgment be so broadly construed as to embrace every means for accomplishing the same result, or means so different in character and arrangement as those embodied in defendants' McLaren machine."

With this conclusion I agree. Roberts was not a pioneer in the art and, therefore, is not entitled to a wide range of equivalents. I regard the means by which results were attained as being of the essence of the Roberts invention. The variations in defendants' machines, which relate principally to these "means elements", are more than colorable departures. In that respect the instant case is distinguishable from cases cited by the plaintiff, such as Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 24 L.Ed. 935, and Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147.

It follows that plaintiff's objections 30 to 35 inclusive are overruled.

Plaintiff's objections 22 to 27 relate to findings of the master respecting certain claims found invalid by reason of non-invention or anticipation. As these findings are not clearly erroneous and have been adopted by the court, these objections are overruled without further comment.

Objection 36, relating to the master's refusal to report the evidence, is also overruled.

Defendants' objections 3 and 4 relate to the findings and rulings of the master respecting the validity of 4 claims of the McLaren patent. These findings and rulings cannot be held erroneous, and the objections are overruled.

The master's report may be confirmed and a decree entered in conformity therewith.