## NATIONAL BISCUIT CO. v. CROWN BAKING CO., Inc., et al.

### No. 3442.

Circuit Court of Appeals, First Circuit.

June 30, 1939.

Thomas J. Byrne, of New York City (Clifford H. Byrnes, of Boston, Mass., and Drury W. Cooper, of New York City, on the brief), for appellant.

William Gates, Jr., of Boston, Mass. (Roberts, Cushman & Woodberry, of Boston, Mass., on the brief), for appellees.

Before WILSON, Circuit Judge, PETERS and SWEENEY, District Judges.

WILSON, Circuit Judge.

This suit was brought for infringement of letters patent No. 1,551,998, granted to Walter McLaren September 1, 1925, for an automatic cup pastry making machine for the manufacture of ice cream cones, and is before this court on appeal by the plaintiff from so much of the decree of the District Court of Massachusetts as held invalid a part of the claims in issue. 25 F.Supp. 619.

The plaintiff is a corporation organized and existing under the laws of the State of New Jersey, and holds the title as assignee to the patent in suit.

The defendants, with which we are especially concerned, are the Crown Baking Company, Inc.; Modern Baking Company, Inc.; and individuals, Samuel Werlin, Benjamin Smith and Benjamin Lichter. The issues as to the other defendants originally named in the complaint have been disposed of by orders and decrees which are not involved in this appeal.

Hereafter in this opinion the parties will be referred to as plaintiff and defendants.

This case involved originally (a) ten claims of the McLaren patent numbered as follows: 1, 6, 15, 19, 26, 36, 39, 46, 61 and 83; (b) six claims, viz.: 8, 29, 52, 53, 55 and 56; (c) claim 83; and (d) four claims, viz.: 5, 12, 47 and 60.

The case was referred to a master, who fully heard the case and made certain findings of fact upon the consideration of all the evidence and made certain rulings of law, all of which findings were adopted by the District Court as its findings.

The master reported that the claims in the first group were all invalid in view of prior sale by Alexander McLaren, a brother of the patentee, for whom the machines were constructed, to the Atlantic Cone Company, Inc., of Boston, and to the American Cone & Wafer Company, Inc., of Dayton, Ohio, and the use commercially by these companies two years prior to the application for the patent on March 10, 1921; that the claims in the second group, including 8, 29, 52, 53, 55 and 56, were not for patentable inventions over the prior claims above referred to; claim 83 was invalid in view of patent issued to one Dietrich, No. 1,294,634; and that claims numbered 5, 12, 47 and 60 of the McLaren patent were valid and infringed. The findings and conclusions of law by the master were adopted by the District Court. To these findings and conclusions of law no cross appeal was taken by the defendants and therefore no question as to the validity of these claims and their infringement by the defendants is before this court.

The plaintiff filed 36 specific exceptions to the master's report. Of these only those numbered 1 to 29 related to the McLaren patent. The others are not involved in this appeal, or were disposed of by orders of the District Court. These exceptions related to only three questions: (1) The question of prior public use: (2) the patentability of claims 8, 29, 52, 53, 55 and 56 of the McLaren patent over alleged claims involved in the prior public use, and (3) the patentability of claim 83 of the McLaren patent over the claims in the prior use and the Dietrich patent. There was also raised before the District Court the question of whether the invalidity of some of the claims invalidated the entire patent. The question of whether the defendants infringed the Roberts patent was not pressed before this court.

So far as the master's report contains findings of fact, they were adopted by the District Court. According to Rule 53 of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, "In an action to be tried without a jury the court shall accept a master's findings of fact unless clearly erroneous," and Rule 52 provides that, "the findings of a master, to the

extent that the court adopts them, shall be considered as the findings of the court."

By Rule 86 the new Rules of Civil Procedure are made applicable to pending cases, unless it would work injustice. Roosevelt et al. v. Missouri State Life Insurance Company et al., 8 Cir., 70 F.2d 939.

First, as to the validity of the McLaren patent, the plaintiff elected to stand on 20 of 83 claims of this patent. Of these 20 claims the master found that only four were valid and infringed, viz.: claims No. 5, 12, 47 and 60. He found that 10 claims were invalid in view of prior public sale and use of the 1920 machine, and 6 claims were invalid as not being patentable inventions over the machines in public use. The major issue before the master was whether the defendants have sustained the defense of prior public sale and use for commercial purposes of the invention for more than two years prior to March 10, 1923, when McLaren's application for a patent was filed.

The master so found, and the District Court found that "there is abundant evidence to warrant the finding of the master that the machines sold or leased to the Atlantic Cone Company, Inc., and the American Cone & Wafer Company, Inc., were operable commercially in 1920".

The chief contention of the plaintiff is that the McLaren machine was not commercially operable prior to March 10, 1921, and was based on the fact that the cones produced on the McLaren machine, which will hereinafter be referred to as the 1920 machine, contained cracks on the inside of 40 percent of the cones produced on it, and the machines had other defects which rendered them inoperable commercially. A machine, however, may be commercially operable, although defects appear in the production, which is not due to fundamental defects and may be eliminated. The chief cause of the cracks in the cones produced in the 1920 machine appears to have been in the so-called waste prevention moulds used in the earlier machines. When the moulds were changed, the production of defective cones was partially eliminated.

The master found that on or about October 25, 1920, the 1920 machine delivered to the Atlantic Cone Company began to be operated commercially. Samuel Werlin, while his testimony and that of his brother, Simon, two of the defendants who testified, was not always consistent, admitted that after October 25 the machine ran well at times, though it still developed trouble. It broke down frequently and produced some cracked cones, which was claimed to be due to the warping of the core bars. When cast iron core bars were substituted in February, 1921, much of the trouble was entirely eliminated. That the machine operated commercially thereafter and to the satisfaction of Samuel Werlin is shown by the correspondence in which he was urgently demanding the delivery of a second machine, which was received in December, 1920. It was set up in January, 1921, and was commercially operated for about four months thereafter satisfactorily, before March 10, 1921, though not necessarily faultlessly.

On November 16, 1920, one of the Werlins wrote to McLaren:

"At the present time we are running the machine from 8 o'clock in the morning until 10 o'clock at night. If business warrants, we may operate night and day.

"No doubt you realize that we are under a very large expense and in order to make things meet it is necessary to operate more than one machine, and we urge you to do your utmost in sending the machine that is ready by express.

"We would like to call your attention to an imperfection in the cones, in that the cone is cracked on the inside."

It is claimed by the plaintiff that the delivery of these machines to the Atlantic Cone Company was merely for experimental purposes; but if the first machine was so defective as to be inoperative, it is inconceivable that the Atlantic Cone Company should urgently demand at the earliest opportunity a second inoperative machine, or, as the master put it: "To say that the Atlantic Cone Company urgently desired a second inoperative machine, or that it thought to make things meet with two uncommercial machines instead of one, is somewhat fantastic."

The first machine was delivered in May, 1920, and the second in December, 1920, which came in response to urgent demands from the Werlins, representing the Atlantic Cone Company. A great deal of dissatisfaction by the Werlins was shown by the correspondence over the delay in making the deliveries of additional machines. The Atlantic Cone Company contracted for the delivery under license

of six more of the 1920 McLaren machines. Tests and experiments were made before delivery, which the license agreement clearly contemplated were to be made. One of the Werlins witnessed a test at Chicago. The McLarens, Walter, the patentee, and his brother, Alexander, an assignee, by this time were satisfied that the machine was sufficiently practicable and useful to operate successfully in the commercial production of cones. It is urged by the plaintiff, however, that the delivery of the machine prior to March 10, 1921, was purely for experimental purposes, but as to this claim the master expressly found that:

"There was no occasion to lease this machine to the Atlantic Co. for experimental purposes. There is no evidence that at the Chicago plant there was not adequate facility for experimentation. I find that this machine was delivered to the lessee, Atlantic Co., pursuant to the contract, as a completed, practical machine for commercial use, and not with the idea that it was to be used by the lessee in Boston for experimental purposes, except insofar as the operation of any new machine in the hands of a user is commonly studied by its manufacturer with a view to further improvement and perfection."

As bearing on this question, the Atlantic Cone Company later brought a bill for specific performance against Alexander McLaren on his agreement, not to furnish a commercially operable machine, but to furnish eight machines. It is difficult to suggest an explanation why anyone should want eight commercially inoperative machines instead of two. If the master's finding that these machines were not delivered to the Atlantic Cone Company for experimental purposes is accepted, it must have been for commercial use.

While waiting for delivery of more machines, the Werlins themselves or the Atlantic Cone Company expended over $8,000 on two new machines in substantial duplication of the 1920 McLaren machine. It is inconceivable that so large an expenditure was incurred by them or this company to produce commercially useless machines.

The burden of proof is on the defendants to show a public use or sale. It is not essential that a defendant show that the use, for example, was of a perfect, commercially operative machine, or as perfect as later improvements made it. The burden of avoiding the effect of a prior public use or sale by showing that the device used or sold was not complete or perfect, or, in other words, commercially inoperative, but was perfected through experiments made while in use during commercial operation, is on the plaintiff and must be shown by strong and convincing proof.

The master having found that the 1920 machines were delivered to the Atlantic Cone Company as lessee as a complete, practical machine for commercial use and not for experiment, except insofar as any new machine is studied in use with a view to further improvement, and no exception being taken to this finding, it is not an issue here. It must also be clearly apparent, from the terms of the agreement under which the machine was delivered and the circumstances as found by the master, that the inventor did not ship the machine to Massachusetts and set it up there in order that he might carry on experiments.

Walter McLaren, in 1920, being satisfied that he had designed a practical machine, went into production. His company, the McLaren Machine Co., during 1920, sold at least two machines to the American Cone & Wafer Company of Dayton, Ohio. Such defects as developed in these machines did not prevent substantial commercial operation. These machines were used by this company in the commercial production of cones prior to March, 1921. Alexander McLaren, on December 3, 1920, of the machines delivered to the American Cone & Wafer Company, wrote:

"We have only one machine in operation in Dayton and expect to start this machine running night and day, 24 hours per day, next Monday."

Nor were they quite as bad in Alexander McLaren's opinion as Walter McLaren now makes out.

" * * * of course we are not entirely rid of the cracks yet as occasionally we find them in the cones, but it seems that the crack does not hurt the cone much except in its appearance." (A. McLaren's letter January 10, 1921.)

The sale of the 1920 machine to the American Cone & Wafer Company and the commercial operation of that machine for a substantial period before March 10, 1921, is by these letters conclusively shown.

The master stated in his report:

"I find that these machines were bought and sold for commercial use and not for the purpose of experimentation. I find that these machines were used prior to March, 1921, in the commercial production of cones, with the same results as accompanied the use of the machine delivered to the Atlantic Cone Co.

"I find that such work on these machines as occurred prior to March, 1921, at the plants of the Atlantic Cone Co. and American Cone & Wafer Co. was for the purpose of making the machines operate with greater satisfaction, and was not in the nature of development work on tentative or experimental machines."

■ Moreover, any improvements made on either of these machines before March 10, 1921, were the result of prior experiments made at the patentee's plant in Chicago, where there were conveniences for conducting experiments, and not at the vendee's or licensee's place of business. The sale and use of these machines before March 10, 1921, by either the Atlantic Cone Company or the American Cone & Wafer Company, while not commercially perfect, must be deemed to be a prior public use. Aerovox Corporation v. Polymet Mfg. Corporation, 2 Cir., 67 F.2d 860, 862.

"The true situation appears to have been that the invention was not in the experimental stage, if by that is meant that the inventor was testing it with an eye to perfecting it. His work was done; indeed he had no technical knowledge with which to proceed, for he merely chanced on the idea. At most all that remained was to see whether it would work well under service conditions. * * *

"But this added privilege has its limit. If in so doing he does in fact exploit the completed invention commercially he takes a chance that he may lose his patent. It is not enough that he intends incidentally to test its value; he may not so reserve his rights; his primary purpose must be the test, though incidentally he may get what profit he can. This is the doctrine of Smith & Griggs Mfg. Co. v. Sprague, supra, 123 U.S. 249, 256, 8 S.Ct. 122, 31 L.Ed. 141, and it has never been questioned. No doubt it is hard to apply, but so are many legal doctrines. Some such limitation is clearly necessary if the privilege of experimenting is not to be abused; the policy of the statute is to prevent an inventor from reserving his monopoly while the art is becoming dependent upon the invention. It gives him two years after he has begun to exploit it, and that exploitation is to be judged by his major purpose; its effect cannot be cancelled because at the back of his mind he hopes to gain more knowledge of the extent of his success.

"Tested by this doctrine, the plaintiff has failed to carry its burden. The very substantial shipments in 1926 were in ordinary course of business; they were commercial in that they were for profit; the customer was not advised that they were experimental; the new process was used indiscriminately with the old. Though it may have been true that the manufacturer hoped in this way to get some light upon how well they worked, the main object was apparently not that. At least the primacy of that purpose is doubtful; the plaintiff has certainly not shown by 'full, unequivocal and convincing' proof that the sales were mainly to test out the invention. It has failed to meet the undoubted prior use." Aerovox Corporation v. Polymet Mfg. Corporation, supra.

The inference of abandonment (by two year public use or sale) "may be controverted by the patentee, upon whom is then thrown the burden of establishing the full, unequivocal, and convincing proof that such use and sale was not of the completed and commercially operative device subsequently patented, and also that such use and sale was not absolute and unconditional, but was principally and primarily for the purpose of perfecting the incomplete invention by tests and experiments." Wendell v. American Laundry Machinery Co., 3 Cir., 248 F. 698, 700.

We are concerned in this case with the first burden and not with the second, for it was found that if there was a use of a complete and commercially operative device, such use was not experimental, but was commercial.

■ The burden is on the plaintiff to show by "full, unequivocal and convincing proof" that the attempted use and sales were merely to test out his invention. Public use of the 1920 machine was found by the master to be, by the written evidence, established at Dayton, Ohio, on the machines sold to the American Cone & Wafer Company, and that it was used to make cones, though they were more or less defective.

All that has been shown on the most favorable view of the evidence is that the 1920 machine was not operatively perfect. This is immaterial as regards claims 1, 6, 15, 19, 26, 36, 39, 46, 61 and 83, which read upon the 1920 machine and are not limited to any addition of improvement. See Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141.

Undoubtedly the machines on the alleged prior use must be capable of being operated commercially, but it is not necessary to prove that such earlier machines were as efficacious as the one for which the patent was granted. Smith & Griggs Mfg. Co. v. Sprague, supra. If they embodied substantially the principles and elements of the invention, they invalidated the patent. In this, which is a leading case 123 U.S. on page 265, 266, 8 S.Ct. on page 130, 31 L.Ed. 141, the court said:

"In the present case, the use of the machine was apparently for the purpose of conducting an established business; the machine itself was the only one used for the manufacture, of which the patentee, by a prior patent, already had a monopoly. He alone supplied the market with the article, and the whole demand was satisfactorily met by this single machine. To this extent it operated successfully. That it was capable of improvement need not be denied, nor that, while it was in daily use, its owner and inventor watched it with the view of devising means to meet and overcome imperfections in its operation; but this much can be said in every such case. There are few machines, probably, which are not susceptible of further development and improvement, and the ingenuity of mechanics and inventors is commonly on the alert to discover defects and invent remedies. The alterations made in the machine in question, however useful, were not vital to its organization. Without them, it could and did work so as to be commercially successful.

"The impression made upon us by the evidence, the conclusion from which we cannot resist, is that the patentee unduly neglected and delayed to make his application for the patents, and deprived himself of his right thereto by the public use of the machine in question, so far as it is embodied in the claims under discussion.

"The proof falls far short of establishing that the main purpose in view, in the use of the machine by the patentee, prior to his application, was to perfect its mechanism and improve its operation. On the contrary, it seems to us that it shows that the real purpose in the use was to conduct the business of the manufacture; the improvement and perfection of the machine being merely incidental and subsidiary. * * *

"In considering the evidence as to the alleged prior use for more than two years of an invention, which, if established, will have the effect of invalidating the patent, and where the defense is met only by the allegation that the use was not a public use in the sense of the statute, because it was for the purpose of perfecting an incomplete invention by tests and experiments, the proof, on the part of the patentee, the period covered by the use having been clearly established, should be full, unequivocal, and convincing.

"The testimony of the patentee seems to be indefinite and vague. The question whether, during the period of his use of the machine, he was experimenting for its improvement, put to him by his counsel, suggested its own answer, which was in the affirmative, as also that respecting his intention during that time to apply for a patent. He gives no account of the dates of any such experiments, nor any particulars respecting them. He does not say whether more than one mode of overcoming the difficulties experienced was suggested and tried, or not; nor, if more than one device was attempted, what they were. The statements are meager and bald, and quite insufficient to satisfy us that the problem of perfecting the machine, in the particulars in which it was proved to be deficient was one that was exercising the ingenuity and inventive faculty of the patentee continuously, with the ever-present intention, during the whole period, to make an application for the patents as soon as he had reached a satisfactory solution."

The plaintiff listed some fifteen or sixteen changes in the 1920 McLaren machine, which it contends were made before it became a commercial operative machine; but the master considered them all, heard all the evidence relative thereto, and found that either they were not fundamental and did not change the character of the machine, or that while some of them may have made the machine more perfect,

in doing the work it was devised to do, it did not follow that it was not commercially operative prior to March 10, 1921.

The foregoing, we think, disposes of plaintiff's objections No. 1 to 21, inclusive, and No. 28 and 29 of the plaintiff's objections are overruled. It can serve no good purpose to attempt within the confines of an opinion to describe in detail the McLaren machine, and the various changes and additions thereto made by McLaren, which resulted finally in a perfected machine, or analyze the mass of evidence bearing on the issue of the prior public use.

Defendants contend that the claims of the McLaren patent, referred to above in connection with the 1920 machine of the Atlantic Cone Company, are invalid because the 1920 McLaren machines, like those of the Atlantic Cone Company, were sold to and also commercially used by the American Cone & Wafer Company of Dayton, Ohio, more than two years prior to March, 1921.

The evidence on which the defendants rely in support of these defenses was brought out on cross-examination of Walter McLaren, a witness called by the plaintiff, and plaintiff offered no objection. M. Swift & Sons v. W. H. Coe Mfg. Co., 1 Cir., 102 F.2d 391.

Plaintiff now contends that these defenses cannot be considered, since they were not pleaded and since no notice was given and plaintiff was unprepared to meet such defenses; but the defendants contend that no notice is required where the prior use or sale is by the inventor himself, in view of the decision in American Hide & Leather Splitting & Dressing Mach. Co. v. American Tool & Machine Co., 1 Fed.Cas. No. 302, p. 647, 654, 655; 4 Fish.Pat.Cas. 284; M. Swift & Sons v. W. H. Coe Mfg. Co., supra, 102 F. 2d at page 393.

Defendants further contend that since the evidence was not objected to, it is competent on the issue of validity, relying on the decision in Zane v. Soffe, 110 U.S. 200, 203, 3 S.Ct. 562, 28 L.Ed. 119.

A question was raised and considered by the District Judge as to whether the invalidity of some one claim renders the whole patent invalid. The circumstances under which this is true, are set forth in Ensten v. Simon, Ascher & Co., Inc., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453, but do not apply here.

We do not understand that the Roberts' patent is now involved in this appeal. It was not a pioneer patent in the art and is not entitled to a wide range of equivalents. The means by which his results are obtained is the essence of his invention. The variations in the defendants' machines, which relate principally to the "means elements", are no more than colorable departures. In this respect this case is distinguishable from Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 24 L.Ed. 935, and Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147, cited by the plaintiff. The objections of the plaintiff, 30 to 35 inclusive, are overruled.

The District Court adopted all the important findings of the master. It was found that both the master and the court were right and not clearly wrong in finding that the 1920 machine was in fact operable and was commercially operated before March 10, 1921, more than two years before the application was filed for the McLaren patent; and since no cross appeal was taken by the defendants to the findings and rulings of the District Court that claims 5, 12, 47 and 60 were valid and infringed, the decree will be:

The decree of the District Court is affirmed without costs.