**HOOKS v. DOWLESS et al.**

**DOWLESS et al. v. HOOKS.**

Nos. 475 and 477.

United States District Court
E. D. North Carolina, Wilmington Division.
April 17, 1953.

McLean & Stacy, Lumberton, N. C., Isaac C. Wright, Wilmington, N. C., for Dowless, et al.

Powell & Powell, Whiteville, N. C., A. Yates Dowell, Washington, D. C., for Hooks.

GILLIAM, District Judge.

These cases arose under the patent laws of the United States, and, having the same subject matter, were consolidated for trial.

Charlie J. Hooks, as plaintiff, seeks a mandatory injunction to force the defendants to abide by the terms of a certain cross-licensing agreement. W. B. Dowless and others, as plaintiffs, seek to enjoin Hooks from further infringement on patents granted to Dowless.

On November 26, 1940, Dowless was granted U. S. Patent No. 2,223,301 for "Improvement in Tobacco Drying and Curing Means". On July 6, 1948, he was granted U. S. Patent No. 2,444,814 for an additional improvement in drying and curing means, this patent having been applied for November 19, 1945.

By separate agreements dated November 1, 1947 and November 13, 1950, Dowless assigned to E. D. Lennon and A. A. Price the sole and exclusive right to make, use and vend a curer bearing the trade mark "Dowless Tobacco Curer", together with complete title and interest in and to the two patents above named and such amendments and improvements as Dowless may secure for the same.

On August 5, 1947, Hooks filed patent application serial No. 766,407 for improvement in heating burner for curing tobacco. This application, consisting of six claims, was rejected in full by the patent examiner in a communication bearing date May 5, 1948. On September 22, 1948, Hooks, through his attorneys, filed an application amendment cancelling the initial six claims and adding five new claims. The amended application was rejected in full by a communication bearing date May 19, 1949. The five additional claims were rejected as fully met in Dowless patent 2,444,814 and another. The Hooks application was

814

directed to a two-piece heating chamber, a one-piece burner and a downdraft tube equipped with a spacer bar.

From the certified copy of the records of the U. S. Patent Office regarding the File Wrapper and Contents of the application by Hooks, it appears that no further amendment was offered subsequent to the rejection of May 19, 1949; and the application was considered abandoned.

In the summer of 1949, Lennon and Price observed the tobacco curer then being manufactured and marketed by Hooks, that curer consisting of a two-piece heating chamber, a one-piece burner and a downdraft tube equipped with a spacer bar, all according to Hooks' application 766,407. Lennon and Price called on Hooks regarding the one-piece burner and the downdraft tube, and asked Hooks to sign a prepared paper stating in effect that Hooks would cease to infringe on the Dowless patent rights. Hooks stated that he had a patent coming through on his two-piece heating chamber, that Lennon and Price were using a similar two-piece heating chamber for which Dowless had not acquired a patent and, therefore, he would not sign the paper.

Thereafter, in the summer of 1949, Hooks called on Lennon and Price, seeking to make a trade of the use of the two-piece heating chamber in return for the use of the downdraft tube with the spacer bar. Hooks then said that he had a two-piece burner nozzle that he had made that was entirely different from the one-piece burner patented by Dowless. At this second meeting, Hooks presented a paper, presumably a cross-licensing agreement; but Lennon and Price refused to sign because the paper was too vague.

Finally, Hooks, Lennon, Price and Dowless executed a cross-licensing agreement presented by Hooks bearing date November 5, 1949, that agreement being the subject of the present suit brought by Hooks wherein he seeks to force compliance therewith by means of a mandatory injunction. The essential parts of that agreement are as follows: "And whereas the parties of the second part (Dowless and others) claim that the tobacco curer invented and manufactured by Charlie J. Hooks has the spacer bar and burner as used in the Dowless Tobacco Curer, and that there is a possibility that it is an infringement on the patent rights of W. B. Dowless; and whereas, Charlie J. Hooks claims that the Dowless Tobacco Curer as now manufactured has a two-piece heating chamber which the said Charlie J. Hooks claims is an infringement on his patent rights; Now, Therefore, in consideration of the premises and other valuable considerations, the parties of the second part agree to permit and allow the said Charlie J. Hooks to continue to construct and manufacture his tobacco curer with the same spacer bar and burner as now used and being a two-piece burner, and the said Charlie J. Hooks hereby releases and grants unto the parties of the second part the rights and privileges to use what is known as the two-piece heating chamber."

This agreement was entered into at a time when Hooks was in receipt of a letter from his patent attorneys, dated September 29, 1949, and reading as follows: "With regard to the above pending application (No. 766,407), please be advised that the Examiner in the Patent Office has rendered an official action, wherein the claims in the application were rejected as unpatentable over patent 2,444,814. This patent was discussed with Mr. Hooks during his last visit to our office, at which time we informed him that his burner structure constitutes an infringement of the claims of the patent. Furthermore, the disclosure in the patent does definitely anticipate any novelty in Mr. Hooks' burner structure. Therefore, it will be futile to continue the further prosecution of the above application and we suggest that the same be abandoned by Mr. Hooks. Accordingly, we enclose herewith a formal Notice of Abandonment and it will be appreciated if Mr. Hooks will execute the same and return it to us for filing in the Patent Office."

Further, on the day of November 5, 1949, but prior to the execution of the agreement, Hooks, in the presence of Lennon and in response to a question as to what he had to trade, answered, in effect, that he was forbearing to prevent the infringement of

his rights with regard to the combustion chamber then in use in the Dowless curer. Hooks stated that he had been notified that his patent was coming through shortly.

■ On these facts it is clear that Hooks is not entitled to performance of the cross-licensing agreement. On the other hand, the Court is satisfied that Dowless, Lennon and Price are entitled to rescission of the agreement because it was induced by fraud, as contended in their answer. There is present a representation untrue in fact, and knowledge of the falsity on the part of the speaker; and the Court is of the opinion that the representation was made with intent that it should be acted upon, and that it was in fact acted upon with resulting damage. In view of Hooks' knowledge of the contents of the letter of September 29, 1949, it is inconceivable that he believed his patent pending on the two-piece heating chamber gave him a protected right and interest in that structure. It is inconceivable that he should believe his patent was coming through shortly; for there is no admissible evidence before the Court tending to support such a belief.

■ Rescission of the cross-licensing agreement is opposed by Hooks on the ground that too much time elapsed prior to disaffirming the agreement and therefore whatever rights may have accrued by virtue of misrepresentations are lost by failure to act. That position is not supported by the evidence and is untenable. Lennon did not observe the date of the letter of September 29, with regard to the date of the cross-licensing agreement, until November, 1951; and the agreement was disaffirmed by public notice on January 14, 1952.

We now direct our attention to the second suit wherein Dowless and others, as plaintiffs, seek to enjoin Hooks from further infringement on the Dowless. patents; and Hooks by way of defense denies infringement and contends: 1. That the Dowless structures had been in public use in this country for more than a year before the Dowless application was filed; 2. That the Dowless patents are void for that they disclose no patentable invention over the state of the art as known and practiced prior to the time the Dowless applications were filed; 3. That the Dowless structures had been patented or described in a printed publication prior to Dowless' supposed invention thereof.

■ It is at once obvious that the Hooks burner is so entirely different from the disclosures of the Dowless patent 2,223,301 that the Dowless claim of infringement on that patent is here denied without further consideration.

There are three claims in the Dowless patent 2,444,814; however, so far as defenses here pleaded are concerned, those claims are essentially the same and only claims 2 and 3 will be examined. They are as follows: "2. In a tobacco curing system, a burner comprising a substantially tubular housing closed at one end and open at the other, a fuel nozzle adjacent to the bottom of said housing and formed of a hollow body having a plurality of upwardly and outwardly directed jet openings, an air inlet tube extending into said housing through the top thereof and terminating above said nozzle, a diametrically disposed bar carried by the lower end of said tube, said bar having a central opening, and an upwardly convergent conical pin carried by said nozzle coaxially thereof engaging in said opening for supporting said tube with the lower end thereof spaced above said nozzle out of the path of the fuel ejected through said jet openings."; "3. In a device as described, a tubular conduit establishing a line of flow of hot flames, a fuel burner at one end of said conduit, said burner comprising a substantially tubular housing closed at one end and open at the other, a fuel nozzle adjacent to the bottom of said housing and formed of a hollow body having a plurality of upwardly and outwardly directed jet openings, an air tube disposed downwardly in said housing and extending diametrically almost across said conduit with its air discharge end in close spaced proximity to said nozzle, a centrally apertured bar in the lower end of said tube, a conical pin on said nozzle engaging in the opening of said bar for supporting said tube thereabove, and a baffle plate extending upwardly from the bottom of said housing at the open end thereof for angularly divert-

ing into said conduit a flow of the hot flames generated at the confluence of the burner gases and the air stream discharged from said tube."

The essential feature of the invention claimed lies in the specific construction of the burner and its spaced relation to the air inlet or downdraft tube. The downdraft tube is spaced above the burner in such a manner that the tube is out of the path of the fuel ejecting through the jets of the burner. By this construction it is contended that a more complete and efficient combustion of the fuel is attained as the incoming air is not heated to such a high degree by flames directly in the path of the air, nor is the air tube itself directly in the flames. This contention is clarified to some extent by observing disclosures of analagous art as revealed in the patent of Sheer, 1,605,789. In the Sheer structure the burner jets are located 1/4 inch above the lower extremity of the draft nozzle, thus releasing fuel directly into the path of the incoming air.

It is not questioned by this Court that Dowless has developed an operative, useful an marketable structure. And in that there were not introduced in evidence the claims and disclosures of patents cited as references for patent 2,444,814, it is not questioned that that patent constituted invention in the art as manifested by prior patents issued. However, the Court does seriously question whether the patent constitutes invention or mere mechanical skill in the improvement of structures not patented but in public use and revealing the state of the art.

Dowless presented in evidence an unpatented burner which he admittedly was selling in 1944. Specifically, those sales are found to have taken place prior to the curing season of 1944. This burner is functionally similar to that described in patent 2,444,814; though it is structurally different.

The 1944 burner is cylindrical in shape, hollow, and provided with a threaded opening through its base to the hollow chamber within for connection with a fuel supply line. It is used in connection with a down-

draft tube for air intake. The burner and the downdraft tube are maintained in a definite spaced relation by a rod or bar soldered or welded diametrically across the flat upper surface of the burner, the outer ends of this rod being anchored by soldering or welding to the inner surface of a larger conical sleeve or collar which in turn receives the lower extremity of a downdraft tube smaller in diameter than the sleeve or collar, the downdraft tube resting on the upper surface of the diametrically fixed rod. The outer and rounded surface of the cylindrical burner is equipped with upwardly and outwardly arranged orifices or jets which connect with the hollow chamber within and through which the generated fuel passes for ignition. These jets lie approximately one inch below the bottom extremity of the downdraft tube as it rests on the diametrically fixed rod; and the jets are so situated as to direct the point of ignition, the flow of hot air and combustion products out of the path of the cool air descending in the downdraft tube.

In operation the 1944 burner was not free from defect. The jets around the burner were initially of 1/16 inch diameter. Experience proved that diameter to be too small, causing the burner to heat up. Consequently, agents of Dowless visited the barns of neighboring farmers using the 1944 burners and without charge rebored every third jet around each burner to a diameter of 1/8 inch. Thereafter, in the spring of 1945, the neighboring farmers were revisited and some of the 1944 burners were replaced without charge with the burner and downdraft tube as described in patent 2,444,814.

After careful examination of the testimony of witnesses, briefs submitted, and evidences of the prior art as depicted in the several exhibits and patents introduced, the Court is of the opinion that patent 2,444,814 is invalid for lack of invention over the burner which Dowless made and sold in 1944, more than a year before the filing of his application for patent on November 19, 1945, and for lack of invention over the prior art as revealed by the 1944 burner.

■ ▆▆▆ There is, perhaps, no principle more firmly established in patent law than that which teaches that patentability of a device requires invention and not merely the exercise of mechanical skill. Invention is the product of applied creative genius, and thereby it differs from any predetermined result that is easily achieved by the exercise of artisanship.

▆▆ Here, the mere enlargement of the jets by drilling produced the result of increasing the flame while decreasing the probability of congestion. That result was entirely predictable by persons skilled in the art and easily achieved by any mechanic. It unquestionably follows that the manufacture of a new burner, similar in principle, but varying in size and shape and carrying large jets at the outset to correspond with a larger supply of air is no nearer invention than the previous enlargement of the jets by drilling. The conclusion is inescapable that the burner as claimed in patent 2,444,814 is not patentable over the 1944 burner which was in public use more than a year prior to the patent application. Further, the claims and disclosures of 2,-444,814 regarding the diametrically disposed bar carried by the lower end of the downdraft tube and resting on the conical pin carried by the burner are not patentable over the 1944 structure. By the definition provided in Union Paper-Bag Machine Company v. Murphy, 97 U.S. 120, 24 L.Ed. 935, the old and the new methods of retaining the downdraft tube are mechanical equivalents and, therefore, the new method as disclosed in 2,444,814 does not rise to the level of invention. The two devices do the same work in substantially the same way, and accomplish substantially the same result. It is immaterial that the 1944 burner was defective and subject to improvement. National Biscuit Co. v. Crown Baking Co., 1 Cir., 1939, 105 F.2d 422.

All of the other defenses contended by Hooks in the infringement case are found to be unsupported by the evidence.

From the foregoing the Court concludes first, that the cross-licensing agreement of November 5, 1949, is void and of no effect, and second, that Dowless patent 2,444,814 is invalid as to all three of its claims and is inoperative to support a suit for infringement.

A judgment shall be entered accordingly.